UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JENNIFER ELAINE CARON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:11-cv-00218-DBH |
| ) | |
| SOCIAL SECURITY ADMINISTRATION ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant ) | |

## REPORT AND RECOMMENDED DECISION

Plaintiff Jennifer Elaine Caron seeks disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Caron is a young woman in her early thirties, whose capacity for employment is restricted by the symptoms of fibromyalgia and certain mental health disorders. The Commissioner concluded that Caron retains the capacity for substantial gainful activity in a subset of light-duty, mentally "simple" occupations that exist in significant numbers in the national economy, according to the testimony of a vocational expert. Caron commenced this civil action to obtain judicial review of the final administrative decision, arguing that the Commissioner erroneously excluded borderline personality disorder and ADHD from the list of Caron's severe mental impairments, making the Commissioner's reliance on the vocational expert's testimony unreasonable. I recommend that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the December 23, 2010, decision of Administrative Law Judge Vicki Evans because the Decision Review Board did not complete its review during

the time allowed. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920. (Docs. Related to Admin. Process, R. 1-17, Doc. No. 9-1.[1])

At step 1 of the sequential evaluation process, the ALJ found that Caron met the insured status requirements of Title II through December 31, 2010, and has not engaged in substantial gainful activity since January 1, 2006, the date of alleged onset of disability. (R. 8-9, ¶¶ 1-2.) At step 2, the ALJ found that Caron has the following severe impairments: fibromyalgia, affective disorder/depression, anxiety-related disorder/post-traumatic stress disorder, and polysubstance abuse. The ALJ concluded that the assessments in the medical records that concern borderline personality disorder and ADHD are inconclusive and do not support a finding that they are medically determinable impairments diagnosed by an acceptable source. (R. 9-10, ¶ 3.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 10.) The ALJ did, however, assess moderate impairment in each of the three mental functioning categories: activities of daily living, social functioning, and concentration, persistence, and pace. (R. 11.) The ALJ did not find evidence of extended periods of decompensation. (Id.)

Prior to further evaluation at steps 4 and 5, the Judge assessed Caron's residual functional capacity. The Judge found that Caron's combined impairments result in a capacity to perform less than the full range of light work. Non-exertional mental impairments further restrict Caron's functional capacity by requiring a workplace free of unprotected heights and moving machinery. Additionally, the ALJ found that mental impairments restrict Caron to the performance of simple

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 9.

tasks, preclude contact with the general public or more than occasional contact with coworkers, and require that her work be isolated with only occasional supervision. (R. 12, ¶ 5.) At step 4, the Judge found that this degree of limitation precluded a return to past relevant work as a dietary aid, fast food worker, or cook's helper. (R. 15, ¶ 6.)

Caron was born in 1980. (Id., ¶ 7.) She has a limited education, but can communicate in English. (Id., ¶ 8.) Though she has worked in the past, the transferability of work skills is not at issue because all of Caron's past relevant work was unskilled. (R. 15, ¶ 9.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Caron could still engage in other substantial gainful employment, including in the representative occupations of bakery worker conveyor line, linen supply load builder, hand bander/paper goods, and assembler small products. (R. 16, ¶ 10.)

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

Caron argues that the ALJ erred by excluding borderline personality disorder and ADHD from the list of severe mental health impairments, at step 2. Caron cites findings by Richard Thomas, Ph.D., from October 4, 2004, and treatment by Kennebec Behavioral Health, asserting that the diagnosis made by Dr. Thomas in 2004 "was confirmed by the diagnoses carried in the records of Kennebec Behavioral Health during her course of treatment." (Statement of Errors at 3, citing R. 234-35, 322-345, 355, 472-554.) Caron further argues that the ALJ "failed to address the significance of the consistent GAFs in the 40s." (Id. at 3.) According to Caron, the failure to include these impairments among her "severe" mental health disorders undermines the finding of not disabled at step 5. (Id. at 4.)

At step 2, it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments resulting in more than "a slight abnormality" having more than a "minimal effect" on the claimant's ability to work. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986); Social Security Ruling 85-28; 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). This is a *de minimis* burden, designed simply to screen out groundless claims. McDonald, 795 F.2d at 1123. However, only medical evidence may be used in support of a severity finding. 20 C.F.R. §§ 404.1528, 416.928. The Commissioner's regulations explain: "Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." Id. § 404.1508. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms. Social Security Ruling 96-7p, 1996 SSR LEXIS 4, *1, 1996 WL 374186, *1.[2] Additionally, when the record suggests an error in relation to the severity assessment of a given impairment, it is generally not an independently sufficient basis for reversal. The claimant must also point to evidence demonstrating that the impairment in question causes a material work limitation that has not been adequately accounted for in the Commissioner's assessment of the claimant's residual functional capacity. See, e.g.,

---

[2] "Symptoms are [a claimant's] own description of [his or her] physical or mental impairment." 20 C.F.R. §§ 404.1528(a), 416.928(a). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." Id. By contrast: "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." Id. §§ 404.1528(b), 416.928(b).

Twitchell v. SSA Comm'r, No. 1:10-cv-00298-DBH, 2011 WL 2692960, *5, 2011 U.S. Dist. Lexis 73914, *13-14 (D. Me. July 8, 2011, Rec. Dec., adopted July 26, 2011); Bolduc v. Astrue, No. 1:09-cv-00220-JAW, 2010 WL 276280, *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3, (Dec. 29, 2009, Rec. Dec., adopted Jan. 19, 2010) (citing cases).

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Maine Disability Determination Services retained Peter G. Allen, Ph.D., to perform the Commissioner's psychiatric review technique and, if necessary, to supply a mental residual functional capacity assessment. In March 2009, Dr. Allen identified personality disorder as being among Caron's severe mental disorders (Ex. 3F, R. 291), yet he nevertheless returned a mental RFC assessment (Ex. 4F, R. 307) that is consistent with the ALJ's finding.[3] Dr. Allen also noted the presence of ADHD and factored it into his assessment. (R. 303, 307.) Brenda Sawyer, Ph.D., conducted a similar review for Maine DDS in October 2009. She did not find the evidence of personality disorder to present an independently severe disorder, but noted the presence of record references to ADHD and borderline personality disorder. Dr. Sawyer characterized the severe mental impairments as the combination of affective, anxiety-related, and substance addiction disorders. (Ex. 10F, R. 438, 450.) Dr. Sawyer returned a mental RFC assessment imposing significant limitations in relation to complex work and social interaction that are consistent with the ALJ's finding. (Ex. 11F, R. 454.)

---

[3]  See Med. Records Part 1, Doc. No. 9-7.

Caron has emphasized the report of psychological testing authored by Dr. Richard Thomas, Ph.D., in October 2004. (Ex. 1F, R. 233.) Therein, Dr. Thomas states his impression as follows: "Jennifer Caron appears to have posttraumatic stress disorder, generalized anxiety disorder, attention deficit hyperactive disorder and borderline personality disorder. . . . A more clear diagnostic formulation that could account for many of her symptoms involves complex trauma syndrome, involving both posttraumatic stress disorder, injury to her personality structure (borderline personality disorder), and the problems with both anxiety and depression." (R. 235-36.) Caron observes that these diagnostic impressions were carried on the charts related to her long-term treatment with Kennebec Behavioral Health.[4] (Statement of Errors at 2-3.) However, Caron has not identified any specific medical finding that would demonstrate a greater degree of work restriction than those assessed by the Maine DDS consulting physicians and the ALJ. Caron also challenges the ALJ's finding for failing to emphasize the presence of "consistent GAFs in the 40s." (Id. at 3, citing R. 206, 213, 249-345, 473-554.) While consistently low Global Assessment of Functioning scores do indicate severe symptoms, these scores do not demonstrate the specific contribution of a "borderline personality" label or an ADHD label in the context of a social security-related assessment that clearly recognizes affective disorder, anxiety disorder, and substance abuse disorder to be severe. In other words, Caron has not identified how the ALJ's omission of these two diagnostic terms at step 2 would result in a finding that any particular area of work-related mental functioning would necessarily be impacted to a greater degree than the ALJ has assessed. Given this particular presentation, I can see no reversible error in the administrative decision. Beyond the fact that the ALJ's assessment is supported by substantial evidence supplied by the consulting physicians, the ALJ's decision also reflects a careful consideration of the longitudinal medical record, including in relation to personality

---

[4] See Med. Records Part 1, Ex. 7F, Doc. No. 9-7; Med. Records Part 3, Exs. 13F, 17F, Doc. No. 9-9.

disorder and ADHD, and relevant credibility findings.[5] "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]," Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965), and the record in this case does not warrant reversal based on Caron's allegations of error at step 2. Caron's final argument—that the vocational expert's testimony cannot satisfy the Commissioner's burden at step 5—depends on Caron's step 2 challenge. Caron has not otherwise alleged error in connection with the ALJ's reliance on the vocational expert's testimony.

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 14, 2012

---

[5] In January 2010, Sharon Smith, Psy.D., rendered a Neuropsychological Assessment Report. (Med. Records Part 2, Ex. 12F, Doc. No. 9-8.) This report post-dates the mental RFC evaluations provided by the consulting physicians, but Caron has not relied on the findings found therein to support her case. The ALJ considered and discussed this additional record source (R. 10, 13) and I have not identified any obvious error in the ALJ's treatment.

7